Morning. May it please the court. Marshall Martin appearing for the appellant Nidal Chatila and there's several issues in this case that were brought up on appeal and I'll try to address each of those. I do want to reserve probably at least seven minutes or so for rebuttal if it's possible and we'll see. Keep an eye on the clock. You'll have to be your own regulator. We'll do that. Thank you, Your Honor. First of all, on the FMLA claim, the court used a standard, a legal standard, which really wasn't accurate. It applied a case which required that the employee request leave and then be denied leave, which just doesn't match the facts of our case, and that's not the only way you can prove an FMLA violation. The statute and the regulations applying the statute are quite clear, and those regulations have been applied by the Ninth Circuit, most prominently in Batchelder v. America West Airlines. And the key test is whether or not there's been interference with an attempt to exercise rights, regardless of however that interference occurred. And the regulations are quite clear that, quote, in all cases the employee should have, excuse me, the employer should require, inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee. So your position on the FMLA is that the district court erred in granting summary judgment? I'm sorry? Your position is the district court erred in granting summary judgment on the FMLA? Yeah, summary judgment. So what you're, I'm trying to figure out what relief you want on it. I assume you want to be able to go to trial to prove your FMLA claim? Absolutely. The court... At the end of the day, what do you get out of that? Not a lot, but... That's why I'm asking. No, but the damages issued isn't before this court. Right. And it's true, on remand there'll be a significant fight on the damages, and there'll be other issues of fact that go to that that are not before this court. So let me ask you the question differently. Let's assume that we find that you're right on the FMLA claim, but that you don't prevail on your other two claims, just for purposes of discussion. Does the FMLA claim remain? Absolutely. Yes, there's interference, a violation, there's damages. What are the damages if she was appropriately terminated? And this goes to issues not before this court. No, I know, but I'm curious. Yeah, it goes to the issue of had she been able to take her FMLA leave as she had done three previous times in her nine years of employment, allowed to go out, unleave, get healthy, then return to work, we have a different future scenario than what happened where she was denied leave. Let me ask the question somewhat differently. Let's assume that we find that they had ample reason to terminate your client, and that there wasn't disability discrimination or discrimination under the two other acts you claim. Did they have to send her out on FMLA leave before they terminate her? In other words, she'd done some things that were firing offenses, just for purposes of discussion. They say, you know, there's no reason to put you on leave because no matter what you do when you're out on leave, no matter how well you rehabilitate yourself out on leave, these offenses are so serious we can't have you work for us anymore. Let's just assume that for a moment. What's your relief? I'm just trying to figure out what your relief under the FMLA is. But, Your Honor, that wasn't their argument. They're not saying that she deserves to be fired. It's a hypothetical question. So let me just ask it again. I'm just curious, what do you get at the end of the day? Do you get several weeks of paid FMLA leave, but not the job back? What happens here? Well, based on your scenario, if in fact their argument is now, well, we fired her because we had good cause. It wasn't because of FMLA. That changes the entire issue and dispute, and now the argument is pretext, and we would go back and argue, no, FMLA was the real reason. Your argument is because she resigned. Had she been given FMLA leave, she wouldn't have needed to resign. She would not have needed to resign. She would have gone out and got healthy. That's exactly the point. Yes. Which, based on interest of time, I'm going to move. Just to be clear on the FMLA, we feel the court applied the wrong legal standard of having to have a request be made and the request denied, and you just need to show interference, and you need to show that the employee was discouraged from trying to exercise the rights, and we think the record is ample to show that she was discouraged from exercising those rights, particularly in that final meeting where her boss kept going back and said, you should have asked for FMLA leave last month. You should have left here. You're throwing bombshells on my schedule. I want a clean, cohesive working schedule, because the week prior she had two separate days where she took intermittent FMLA leave. It's very clear from the record that he was discouraging her from taking that leave, and of all the things said in that meeting that were recorded, never once did he say, yes, Nidel, go ahead and take your leave. He never did that. Instead, he just pushed and pushed and pushed, and he coerced her resignation. The next issue... But if you're right on the FMLA, following up on what Judge Hurwitz has asked you, and you get a new hearing, the resignation is considered void, wouldn't she get fired anyway because of the acts, the six wrong acts that she did? Your Honor, that has not been the argument of the employer here at all, that they were going to fire her. That is not what they've claimed. They claim she resigned, and there's been no argument. And if that were the argument, then we would go back and show and show the pretext, because she was written up three times. She was written up in March of 2013, and it had to do with her complaining about being harassed, and then they turned it around on her. I think you've answered my question. Okay. So of the three write-ups, there's one medical error in all three write-ups. That's it. That's the only thing. And then in the meeting, they come in with this list, but that... They were giving her a final warning. They were not firing her. Under the ADA rehab, the disability claim, there's really two claims here. I'll deal with the first. Well, on both of them, I've got the same question, so maybe you can... Have you identified a similarly situated employee who was treated better than her? Say, can I? Have did you in this record? No, there is... No, there's not a similarly situated employee because she was somewhat unique, but there are other employees who were her co-workers who were treated considerably different. But they weren't similarly situated? They didn't have anorexia, no. Right, so they weren't... So you can't... My question is, can you demonstrate that... Is there anything in this record that demonstrates that she was discriminated against because of her, if I can put it in one basket, her disability? Yeah, I suppose the clearest thing is, is that when my client complained about harassment from this one pharmacist in particular, Dan Baker, those were ignored. Repeatedly ignored. And the reason they gave was, well, she was the sole source of the complaint. Nobody corroborated it. However, when this guy did things to other people and they complained, he was written up. And in fact, he was written up repeatedly when other people complained, even though they were the sole source. But what's the evidence that the adverse actions, if you will, against your client were because of her disability? They've said flat-out they didn't believe her complaints because of her disability. In fact, they had their experts say that. She wasn't credible in her complaints of harassment based on her disability because of her disability. That's why they didn't believe her. And they instead disciplined her for her interactions with employees that were harassing her and always took the other employee's side, even though this one employee in particular was written up multiple times when other people complained. And the pharmacy director basically lied about that in his deposition as to that even occurring, and then why it occurred, and then why he only got first warnings every single time. Don't you have to show that the adverse action, assuming there is one here, coercing her to resign, was because of her disability? I think, absolutely. Not just that along the way she may not have gotten some things that she wanted, but that the adverse action was because of her disability. Absolutely, and there's ample evidence on the record that the adverse action, the constructive discharge, the coercing her to resign, was because of her disability. He did not want her there. He was, as he said, she's throwing bombshells in his schedule every week because she... Let me ask one more question because I know you want to save time for rebuttal. Could you tell me what the disability was that they said made her unbelievable? Her anorexia nervosa. They thought she was incredible because of that. That was their expert opinion, and that's in the record. I've looked for cases that hold that coercing somebody to resign, assuming that's what happened here, is an adverse employment action. Do you have any? I do not have a specific case about coercion. The constructive discharge we've typically defined as making the job condition so uncomfortable that a reasonable person would quit. That's not really your claim here. Your claim is that she was coerced during this interview to resign. Is there any case that allows me to... Any case you can give? What's your best case that that's a constructive discharge? The best argument I have for that being constructive discharge in and of itself is that the standard for constructive discharge is an individual feeling compelled. Because of work? But because of conditions that work. It doesn't have to be over time. So if you take someone like her, this 90-pound anorexic woman who's extremely timid. Her boss knows she can be pushed into anything. Gets her into a meeting and coerces her. Says my kids are gonna be on the street. I'm gonna lose my license. Lays this huge guilt trip on her. He knew exactly what he was doing. I understand your factual argument. It's just a very safe time. Do you have a case that supports your position? Of coercion? Coercion becoming... Coercion to resign becoming constructive discharge. No, I just think these facts support... I understand your position. Even, and I want to be clear, they even support constructive discharge, these facts. Well, they have to support constructive. You have to have an adverse employment action. On the ADA claim, that's correct. Although there's other adverse employment actions in the record as well. One last thing, and I know I'm kind of running out of time, is I just want to be very clear that this hostile environment claim was made in the complaint. It was recognized by defendant, by the appellee themselves in the joint case management plan. There was never a motion for summary judgment on it, yet it's just lumped in by footnote by the by the appellee and lumped in by footnote by the district court. So I've got the... Now, see, the problem with trying to save time for rebuttal and raising new arguments just before you sit down is that I got to ask a question about it. Identify what paragraph of your amended complaint the hostile environment claim is in. Paragraph 51 is the kind of conclusory paragraph where we talk about her being subjected to a hostile environment and physical pain and suffering. It's supported by other paragraphs 12, 14, 16, 18. Do you agree with me that the words hostile environment don't appear anywhere in your amended complaint? They do. Paragraph 51... And the hostile... I got you. Paragraph 51, suing the failure to effectively deal with and end the hostile work environment. Is that the only place it is? That's the only place that that phrase appears, followed by the physical injury, pain, and suffering. Gotcha, okay. But there's other allegations relevant to it in the earlier in the complaint. One last thing, I would say as a matter of law, this Ninth Circuit has not recognized a hostile environment claim, but there's clear legal authority to do so, including the statute itself about terms, conditions, and privileges of employment. And it's identical to the Title VII language, where workplace harassment is an independent claim. Thank you. Good morning. May it please the Court, Robert Goldich for the Appellee Scottsdale Health Care. Our position is that the District Court very carefully sorted out the undisputed facts from the disputed facts and properly granted summary judgment only on the undisputed facts. The hospital here unquestionably administered progressive discipline for a series of performance-related issues, and there's absolutely no evidence in this record that any of that discipline, including the final discipline that was administered on October 22, was because of the plaintiff's disability. The plaintiff... What do you do with the FMLA claim? Taking the facts in the light most favorable to your opponent, she wrote on the warning letter, need to take FMLA claim. I can't pronounce the supervisor's name, so I'll screw it up. It's Manzucani. Manzucani, very good job. Manzucani says they discussed FMLA during the meeting. Why isn't that enough to put the employer on trial? Your Honor, under this Court's decision in Escriba v. Poultry Farms, the plaintiff... This was a plaintiff who was very familiar with her FMLA rights. Yeah, but it's not a negligence standard. If she says, as she claims she did, she has a declaration that says so. I asked for FMLA claim. She may not have. There's a transcript of the meeting, and I find her a fact, and I find it that she didn't, but let's assume that she did. Isn't that enough to trigger the obligation of the employer to inquire further? And there was further discussion, and again, if you listen to the tape, I mean, that's why... I have. I can't figure out what... Well, at least I've read the transcript. I'm sorry. Well, the tape is better than the transcript because what the tape reveals is that during the course of the meeting, the plaintiff clearly moved from her initial statement walking into the meeting about FMLA leave into a decision that she would voluntarily resign. Okay, let's assume that's true. If she comes in and says, I'd like FMLA leave, and later morphs into a decision to resign, isn't there still an obligation in between of the employer to inquire further about whether she... about her request for FMLA leave? Not under Escriba, not if the employee voluntarily abandons the request for leave. But where does she voluntarily... You see, your argument is that at the end of the meeting, she resigns. Therefore, she must have voluntarily abandoned her request for leave, but if that request is never responded to in the way the statute requires, how can we find abandonment? Well, because the... It wasn't by the end of the meeting the plaintiff had changed her mind. Again, if you listen to the... I'm accepting that. I'm accepting that she changed her mind. My question's a very different one. My question is, let's assume she'd come in at the beginning of the meeting and said, I formally request FMLA leave. And then everything that happened thereafter in the meeting happened. Her supervisor said, boy, you're causing me problems, and your schedule's screwed up, and I'm going to get fired if you keep doing what you're doing. And at the end of the meeting, she says, okay, I resign. Isn't there a violation of the FMLA because during that meeting, nobody responded to her request by inquiring further about what she wanted and how they might accommodate her? I think the answer, Your Honor, is FMLA leave is unpaid leave. And once an employee has resigned, assuming there's not a constructive discharge, assuming you find it in our favor on the other claims, which I think was Your Honor's question to Appellant's counsel, at that point, the employee is literally on her last day of work. Well, and that's a separate question, and that's why I asked your opponent that. But I'm just asking now, putting aside all the other claims, doesn't the FMLA require that the employer respond to that request in some way? If the employee's employment is continuing, the answer's yes. So our case depends on a finding that the employee's employment ended because once the employment ends, the cases Your Honor is referring to are cases where there's an ongoing employment relationship. In other words, someone is in the middle of their employment, they have a medical problem, they have a family problem, they have a situation covered by the act. I think an interference case is where the employee says, I need time off, I want time off, and there's a continuing employment relationship, and the employer says you can't have the time off. You can't go care for your ailing mother. That's interference with the person's right to take leave. If the employee, to take a different set of facts, if the employee had submitted a note of resignation two weeks earlier and comes into the employer on their last day of employment and says, you know, I'd like to take, you know, family leave, and the employee's employment is ending, there's nothing to discuss about that. Because it's unpaid leave. Because it's unpaid leave, and in this case, the employee, in truth, had innumerable time following October 22nd to deal with her medical condition, and unpaid leave is academic for an employee whose employment is ending for reasons that are independent of the recovery. So as I understand your position is the FMLA claim goes away, even if you violated the FMLA, because unless we find that she was coerced into resigning, all she would have gotten was three days off. Exactly. And that's our legal position. I think our position is on the undisputed facts. She was not, her rights were not interfered with because her supervisor, she knew from past dealings, her supervisor was not the arbiter of granting or not granting leave. That was a function of the Human Resources Department. She was having a discussion with her supervisor in which at the start of the meeting there was a reference to the FMLA, and then by the plaintiff's own admission, by the plaintiff's own handling of the conversation, the 90% of the meeting was devoted to the plaintiff's problems in treating patients, the safety-sensitive nature of her position, the fact that she was putting patients at risk, and the plaintiff made a decision in the course of that meeting that she agreed with her supervisor that she was a risk to patients. But doesn't she also claim that she was coerced to make that decision because the supervisor said, I can do it the hard way, or you can resign? Well, I think the issue is the law... If we're reviewing a judgment, an un-motion summary judgment, shouldn't we give her the benefit of the doubt? Shouldn't we interpret the facts most favorably to her and see if there's a triable issue of fact as to whether she was coerced? Well, I think the standard is constructive discharge. Did the supervisor make her working conditions so intolerable that she had no choice except to resign? It's an objective standard. The standard is not how the plaintiff felt. The standard is whether the supervisor in the meeting was creating working conditions that were so... Well, she comes in claiming FMLA as she's done before. As I understand, the plaintiff says... But when she makes that claim, it's the obligation of the employer to advise her that she has a right under FMLA. Do you agree with that? Well, in this case, the plaintiff knew she had rights under the FMLA and she was familiar with it. The supervisor only had a duty to inquire if the employee was not invoking the FMLA and the reason the plaintiff was asking for leave was something that implicated the FMLA to leave. So I think this is not a case of the duty to inquire further. It's a question of whether the plaintiff's voluntary action... So you think that the record here sustains that it makes it undisputed that she knew about her rights under FMLA regardless whether she was advised in mid-conversation by the employer? Exactly. She said, again, this is on the tape, but she said going into the meeting, I am going into a meeting with my supervisor to discuss my request for FMLA and my mistake in treating a patient. So assume for a moment that this is what the record shows. Somebody comes in and requests FMLA and the supervisor ignores that request and the meeting proceeds as it proceeds. Your position is that because she had FMLA before, that violation is excused? No, because she knew of the process for... That's my question. So your answer is yes, is it not? Correct. What case says that? The Escriba case, the Ninth Circuit's decision in Escriba was a case where the plaintiff had taken FMLA many times and came into a meeting where she said, I'm ill, I need time off, and the employee decided not to pursue it as an FMLA request and the court said it's up to the employee to decide whether or not they're going to pursue an FMLA claim or not and the employer had no obligation to force FMLA on this plaintiff. But doesn't the employer have an obligation to inquire further? If the plaintiff had not resigned, I think my answer is yes. I mean, clearly. Okay. So you're... This is what I'm going to want to get back to. Judge Bay asked you this question and I'm not sure I understood your answer. Why... Let's assume you have a meeting with your supervisor and he makes the meeting so uncomfortable because of accusations and other things that you feel compelled to resign. Is that a constructive discharge? I think it has... It's an objective test, not a subjective test. Okay. So... But there can be facts that make such a meeting equivalent to a constructive discharge. Your Honor, I think to take an extreme case, if a supervisor puts a gun to the head of the... Okay. Well, you don't... The truth is you don't need that. You have to make the working conditions such that a reasonable person would resign. Exactly. I think a supervisor that is explaining to an employee... I mean, this was... I understand. No, I'm asking a different question. Don't... You don't... Don't have to tell me how innocent your supervisor was. I'm asking, could a single meeting with a supervisor in which the supervisor coerced you into resigning amount to a constructive discharge? Only if it objectively... Sure. Okay. So, it conceivably could. Now, let's assume for a second in this case that you did have a constructive discharge. What does that do to your position on the two substantive claims? If it's a constructive discharge, then it's analyzed under the McDonnell-Douglas standard as an adverse employment action, and the plaintiff has to show that the reason for the constructive discharge was discrimination, and that was our alternative argument in the district court. And that's what I've been trying to get you to address. The district court didn't reach that issue because of the way the case was disposed of, but we certainly argued in our summary judgment motion, and we argued in our appellate brief here, that under a standard McDonnell-Douglas test, there's no evidence whatsoever in this record that the supervisor's actions with respect to the plaintiff were motivated by unlawful discrimination. The evidence was that there were legitimate reasons. The employer has a burden under McDonnell-Douglas only to articulate... And let's assume you've met that by showing that she screwed up some stuff. Correct. And then she has to show pretext, and again, in the meeting where she is admitting, whether or not she resigned, where she is admitting the predicate actions, she is admitting that she had become unable to do her job, she's admitting that she did the patient actions that were leading to the employer's disciplinary action. There's just no evidence of pretext, even assuming there was an adverse employment action, and the plaintiff has that burden under the APA. Her argument, I take it, is that there were other employees who were as bad as her, and they were never, they were, assuming that they were constructively, that she was constructively discharged, they never were. Zero evidence of that in the record. The plaintiff has zero evidence in the record for that position. That's the issue. The plaintiff referred to our expert report. That was post-litigation. I mean, there's no evidence that the employer, in this case, was motivated by anything other than the reason that the employer stated as being the reason for the disciplinary action. As I understand it, the district judge never reached that issue because she stopped earlier. Didn't find an adverse employment action. Exactly right, Your Honor. But we did raise that issue below, and we did brief it here, because I agree with Your Honor, if you treat the case as a constructive discharge, then you have to get to that issue of whether or not there's evidence of discrimination under the standard McDonnell-Douglas formula. And there's no evidence of, there's no direct evidence of discrimination in the record, and so the plaintiff has to prove pretext, and there's no evidence of pretext in the record either. Thank you very much. Thank you. Very quickly, there was a lot of evidence of pretext in the record, but as you say,  Well, it is. It is, because they moved for summary judgment. We can affirm that summary judgment on any basis supported by the record, so tell me where in the record there's evidence that her firing, assuming she was fired, that it was a constructive discharge, was it pretext for discrimination against her because she was anorexic? It goes, Manzacani, the director, claims after the fact it was because of medication errors. However, those were not in any of the three warnings except one error in the final warning. More importantly, after she's fired and she's wanting to be reinstated, he has an email where the only reason he cites for not reinstating her is her interactions with others. He never mentions medication errors. That medication error, so there's clear evidence in the record that that reason, which is the reason, had she been fired, is a pretext. And so even if we have to go there, there's plenty of evidence in the record, and that's been discussed in the briefing to this court as well. I do want to address in the time left is the fact that we also cited the October 21st email the night before the meeting wherein she says it may be a good idea for me to take FMLA to recover from the emotional factors that have put impact on my illness. I have my doctor involved as well as my therapist to help me out. And then she talks about dosing. She's giving them the notice required under the FMLA. She doesn't have to say, I request FMLA leave. She's putting them on notice, and under the regulation 825.302c, in all cases, the employer should inquire further. Even a case like hers where she's taken leave before, that's not the issue. If they have to figure out and inquire further, if it's necessary to have more information about whether leave is even being sought, that's what the regulation says. That's their duty. And so when she sent this email the night before, there shouldn't have been a meeting the next day. They should have had the specialist they had for FMLA benefits email or talk to her, get her set up. She shouldn't even have the meeting. Then we go into the meeting and we discuss that thoroughly. They shouldn't even have gotten to that. You've exceeded your time, counsel. Thank you. You've exceeded your time. Thank you. Thank you. The case of Neal Chatila versus Scottsdale Health Care Hospitals will be submitted.
judges: Bea, Hurwitz, Motz